## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICIA REITZI, individually and on behalf of all persons similarly situated,** | : : : : | **Civil Action No.:** |
| | : : | **Complaint — Class and Collective Action** |
| **Plaintiff,** | : : | |
| **v.** | : : | **Jury Trial Demanded** |
| | : | |
| **VANS EXPRESS, INC. and DHL EXPRESS (USA) INC. d.b.a. DHL EXPRESS,** | : : : : | |
| **Defendants.** | : | |

## <u>CLASS AND COLLECTIVE ACTION COMPLAINT</u>

Plaintiff Patricia Reitzi ("Plaintiff"), through her undersigned counsel, individually, and on behalf of all persons similarly situated, files this Class and Collective Action Complaint ("Complaint") against Defendants Vans Express, Inc. ("Vans") and DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") (collectively, "Defendants") seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and Pennsylvania state law. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## <u>INTRODUCTION</u>

1.     Defendant Vans provides last-mile delivery services to Defendant

DHL.

2.      Defendants jointly employ non-exempt Courier Drivers, such as Plaintiff and members of the proposed Collective, to transport packages from DHL's facilities to DHL's customers ("Courier Drivers").

3.      This case is about Defendants' failure to comply with applicable wage and hour laws and to pay non-exempt Courier Drivers for all time worked – including overtime – as was required to deliver hundreds of DHL packages each day and meet DHL's delivery needs throughout Pennsylvania and potentially other states.

## JURISDICTION AND VENUE

4.      Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims derive from a common nucleus of operative facts.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in and/or conduct business in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this Judicial District.

## PARTIES

7.      Plaintiff Patricia Reitzi is a citizen of Pennsylvania and resides in

Harrisburg, Pennsylvania. Plaintiff Reitzi has worked for Defendants as a Courier Driver in Harrisburg, Pennsylvania since approximately November 2019. Pursuant to 29 U.S.C. § 216(b), Plaintiff Reitzi has consented to be a plaintiff in this action. *See* Ex. A.

8.     Defendant Vans Express, Inc. ("Vans") is an Ohio corporation and maintains principal offices in Harrisburg, PA.

9.     Defendant DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") is an Ohio corporation and is headquartered at DHL's corporate office in Plantation, FL. DHL operates throughout the United States and maintains facilities across Pennsylvania including, without limitation, in Harrisburg, PA.

10.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of the Defendants.

11.     During times relevant, Plaintiff was an employee of the Defendants and is covered by the FLSA.

12.     Defendants are employers covered by the FLSA.

13.     Defendants employ individuals, including Courier Drivers, in Pennsylvania and other states.

14.     Defendants employ individuals engaged in commerce or in the

production of goods for commerce and/or handling, selling, or otherwise working on

goods or materials that have been moved in or produced in commerce by any person,

as described by 29 U.S.C. §§ 206-207.

15.     Defendants' annual gross volume of sales exceeds $500,000.

## COLLECTIVE DEFINITION

16.     Plaintiff Reitzi brings Count I of this lawsuit pursuant to the FLSA, 29

U.S.C. § 216(b), as a collective action, individually, and on behalf of the following

collective:

> All current and former Courier Drivers or delivery drivers who were
> paid by Defendant Vans to deliver packages for DHL in the United
> States during the applicable limitations period (the "FLSA Collective").

17.     Plaintiff brings Counts II and III of this lawsuit as a class action pursuant

to Federal Rule of Civil Procedure 23, individually, and on behalf of the following

class:

> All current and former Courier Drivers or delivery drivers who were
> paid by Defendant Vans to deliver packages for DHL in Pennsylvania
> during the applicable limitations period (the "Pennsylvania Class").

18.     The FLSA Collective and the Pennsylvania Class are together referred

to as the "Classes."

19.     Plaintiff reserves the right to redefine the Classes prior to notice or

certification, and thereafter, as may be warranted or necessary.

## FACTS

4

## **Defendants Are Joint Employers**

20.     zDHL is the world's leading delivery company, with a team of shipping professionals that transport goods to customers across the United States, as well as in other countries and territories, in a short period of time.

21.     Defendant DHL holds itself out as a company able to provide domestic and international parcel pickup, delivery, and return solutions for business customers and individual customers, as well as e-commerce solutions and facilitation services.

22.     Defendant DHL and the local and regional delivery vendors it partners with, such as Vans, are in the business of delivering goods across the United States.

23.     Defendant DHL utilizes local and regional delivery vendors, such as Vans, to transport goods across the country to customers in a short period of time.

24.     Defendant DHL relies on local and regional delivery vendors, such as Vans, for the essential services of transporting goods from DHL facilities to customers' doors as quickly as possible.

25.     The local and regional delivery vendors, such as Vans, are an integral part of DHL's business. Without the use of delivery vendors, such as Vans, DHL could not get their goods to customers.

26.     Defendant DHL attempts to shield itself from liability by utilizing third-party delivery vendors, such as Vans, to provide the employees to transport their goods.

27.    Defendant Vans provides delivery services for Defendant DHL at one or more of DHL's ServicePoint locations through the use of Courier Drivers such as Plaintiff and members of the proposed Collective and Class.

28.    Courier Drivers are engaged to fulfill DHL's delivery needs and to transport goods from DHL ServicePoint locations to DHL customers.

29.    Courier Drivers work in the transportation industry.

30.    Courier Drivers are not required to have a commercial driver's license as a condition of employment.

31.    Courier Drivers drive vehicles that weigh less than 10,001 pounds.

32.    As required by DHL, Vans provides Courier Drivers, such as Plaintiff and other Courier Drivers, with a DHL-branded vehicle.

33.    The goods that Courier Drivers transport from DHL ServicePoint locations to DHL customers originate, or are transformed into their final condition, in a different state than the delivery state.

34.    The goods the Courier Drivers transport from DHL ServicePoint locations to DHL customers are not transformed or modified during the shipping process.

35.    Courier Drivers deliver goods to DHL customers in the same condition as when they were shipped to the DHL ServicePoint.

36.    Courier Drivers deliver goods to DHL customers that were shipped

from around the United States.

37.    Courier Drivers handle goods that travel interstate.

38.    Courier Drivers are directly responsible for transporting goods in interstate commerce.

39.    Courier Drivers operate vehicles in order to deliver DHL packages, which is vital to the commercial enterprise of the local and regional delivery vendors and DHL.

40.    A strike by Courier Drivers would disrupt interstate commerce.

41.    Plaintiff and other Courier Drivers are necessary in order for DHL goods traveling interstate to make it to their final destination – DHL customers.

42.    At all times relevant, DHL has been affiliated with and/or operating with Vans, with respect to Plaintiff and other similarly situated employees, such that DHL and Vans are "joint employers" of Plaintiff and other similarly situated employees.

43.    Courier Drivers for the local and regional delivery vendors, including Vans, are required to wear DHL-branded uniforms while making deliveries and are further equipped with DHL-branded badges.

44.    When Courier Drivers present themselves to DHL customers, they are identifiable as DHL associates.

45.    Courier Drivers are provided with a DHL-issued handheld scanner. The handheld scanner is used for navigation assistance, package scanning, and as a phone.

The scanner allows DHL to contact and track a Courier Driver's movement and work progress.

46.    DHL has direct access to the handheld scanners, which are given to and used by each Courier Driver.

47.    DHL assigns and provides routes to local and regional delivery vendors, including Vans.

48.    DHL oversees and controls the work activities, work schedules, conditions and management of Courier Drivers.

49.    Throughout their employment with Defendants, Courier Drivers are required to comply with DHL's operational procedures and in meeting DHL's work expectations.

50.    Although DHL does not directly pay Courier Drivers, its policies and expectations regarding payment and delivery goals dictated the delivery vendors' ability to pay Courier Drivers properly for their overtime work.

## The Nature of Plaintiff's and Other Courier Drivers' Work

51.    Plaintiff Reitzi was hired on or around November 2019 and has since worked as a Courier Driver for Vans out of one of DHL's Pennsylvania ServicePoints, making deliveries on behalf of DHL.

52.    Plaintiff Reitzi worked out of DHL's ServicePoint located at 7917 Derry St. Harrisburg, PA 17111.

53.    The nature of the work performed by Courier Drivers is similar and standardized at each of the DHL ServicePoints where Vans provides services for DHL, as the nature of the work is centrally controlled and directed by Defendants.

54.    At all times during the relevant period, Plaintiff began her shift at a designated DHL ServicePoint, where they picked up their assigned van, a handheld scanning device, a route sheet, and packages. Plaintiff has observed other Courier Drivers working similar schedules.

55.    At all times during the relevant period, Plaintiff and other Courier Drivers were regularly required to clock-in at the DHL ServicePoint at approximately 6:00 am on Monday mornings.

56.    At all times during the relevant period, Plaintiff and other Courier Drivers were regularly required to clock-in at the DHL ServicePoint at approximately 9:30 am on all other weekdays, excluding Monday.

57.    Plaintiff regularly worked in excess of forty hours per week. Plaintiff observed that other Courier Drivers have routinely worked similar hours.

58.    At all times during the relevant period, Plaintiff and other Courier Drivers have been regularly scheduled to work five or more days per week, with shifts that exceed eight hours in length.

59.    Plaintiff regularly worked in excess of eight (8) hours each workday, sometimes as much as twelve hours per workday. Plaintiff has observed that other

Courier Drivers have routinely worked similar hours.

60.     Upon information and belief, Plaintiff and other Courier Drivers have been required to complete all assigned routes regardless of the length of their shifts.

61.     Upon information and belief, all of the work-related activities that Plaintiff and other Courier Drivers have been required to and do perform often takes ten to twelve hours per day to complete.

62.     Defendants unilaterally select the parcels and the quantity to be delivered. Plaintiff and other Courier Drivers cannot reject delivery assignments.

63.     Plaintiff observed that other Courier Drivers routinely worked similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

64.     Upon information and belief, Defendants regularly entered into the timekeeping system and remotely manipulated drivers' time punches when Plaintiff and other Courier Drivers clocked-in and began working prior to the scheduled start of their shifts.

65.     Defendants knew, or absent their own recklessness should have known that the time that Plaintiff and Courier Drivers spent working before the scheduled start of their shifts was compensable and should have been recorded.

66.     Due to the volume of work, Plaintiff routinely worked through her meal

period resulting in off-the-clock work. Plaintiff observed that other Courier Drivers routinely worked through their meal period.

67.    Plaintiff and other Courier Drivers are non-exempt for overtime compensation purposes.

## **Defendants Failed to Pay Courier Drivers Properly**

68.    Plaintiff and other Courier Drivers regularly worked five (5) or more days per week.

69.    Plaintiff and other Courier Drivers regularly worked forty (40) or more hours per week.

70.    Defendants were aware that Plaintiff and other Courier Drivers worked more than forty (40) hours per week.

71.    Plaintiff regularly worked forty-five (45) to sixty-five (65) hours per week. Plaintiff observed that other Courier Drivers routinely worked a similar number of hours.

72.    Defendants did not compensate Plaintiff and other Courier Drivers for all hours worked over forty in a workweek.

73.    Throughout the course of Plaintiff's employment, Plaintiff routinely worked through her meal break period without compensation due to the sheer volume of deliveries assigned to her and in order to meet the work expectations set forth by Defendants. Furthermore, Plaintiff was unable to take short rest breaks

throughout her workday in order to meet work expectations. Plaintiff observed that other Courier Drivers also routinely worked through their rest breaks and meal breaks, without compensation, due to their strenuous work loads and in order to meet the expectations set forth by Defendants.

74.     Plaintiff and other Courier Drivers were not provided meal breaks. Accordingly, Plaintiff and other Courier Drivers routinely worked through meal breaks without proper compensation. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

75.     Despite Plaintiff's inability to take meal breaks, Defendants automatically deducted thirty (30) minutes from each shift worked for a meal break, regardless of whether Plaintiff actually took a break during her workday. Plaintiff observed that other Courier Drivers were also made subject to the same practice.

76.     Defendants were aware that Plaintiff and other Courier Drivers were not compensated properly for working through their breaks.

77.     Defendants did not accurately record and track all of the hours worked by Plaintiff and other Courier Drivers and therefore failed to compensate Plaintiff and the putative collective action members at one and one-half (1 ½) times the regular rate of pay for hours worked over forty (40) hours in a workweek.

78.     Plaintiff and Courier Drivers were not paid for all hours worked and

were not paid overtime, as required by law.

**The Failure to Properly Pay Courier Drivers Is Willful**

79.     Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

80.     Even though the FLSA requires overtime premium compensation for hours worked over forty (40) hours per week, Defendants do not pay Courier Drivers, such as Plaintiff, proper overtime compensation for overtime hours worked.

81.     Defendants knew, or absent their own recklessness should have known, that the Courier Drivers were entitled to such overtime premiums.

82.     Defendants failed to pay Plaintiff and other Courier Drivers all compensation owed, including overtime premiums.

83.     By failing to pay all the compensation owed to Plaintiff and other Courier Drivers, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions and state law.

84.     Defendants have not made good faith efforts to comply with the FLSA and applicable state law.

**COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

85.     Plaintiff Reitzi brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

86.     Plaintiff Reitzi desires to pursue her FLSA claims on behalf of any

individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

87.    Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid for all hours worked and were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

88.    Specifically, Defendants failed to compensate Plaintiff for all hours worked and failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

89.    The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any payroll companies Defendants use.

90.    Defendants employ many FLSA Collective Members throughout Pennsylvania and other states. These similarly situated employees may be readily notified of the instant litigation through direct means, such as U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest),

14

and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

91.     Plaintiff brings this action as a class action pursuant to FED. R. CIV. P. 23 on behalf of herself and the Pennsylvania Class as defined above.

92.     The members of the Pennsylvania Class are so numerous and dispersed that joinder of all the members is impracticable. Upon information and belief, there are between 50 and 100 members of the Pennsylvania Class.

93.     Plaintiff will fairly and adequately represent and protect the interests of the Pennsylvania Class because there is no conflict between the claims of Plaintiff and those of the Pennsylvania Class, and Plaintiff's claims are typical of the claims of the Pennsylvania Class. Plaintiff's undersigned counsel is competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like the one at bar.

94.     There are questions of law and fact common to the proposed Pennsylvania Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Defendants violated and continue to violate Pennsylvania state law through their policies and practices of not paying their Courier Drivers for all hours worked and overtime compensation.

95.     Plaintiff's claims are typical of the claims of the Pennsylvania Class in the following ways, without limitation: (a) Plaintiff is a member of the Pennsylvania

Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Pennsylvania Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Pennsylvania Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Pennsylvania Class; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Pennsylvania Class members.

96.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Pennsylvania Class predominate over any questions affecting only individual Class members. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Pennsylvania Class are readily identifiable from Defendant's own employment records. Prosecution of separate actions by individual members of the Pennsylvania Class would create the risk of inconsistent or varying adjudications with respect to individual Pennsylvania Class members that would establish

incompatible standards of conduct for Defendants.

97.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Pennsylvania class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

98.    Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Pennsylvania Class. Plaintiff envisions no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiff and the FLSA Collective)**

99.    All previous paragraphs are incorporated as though fully set forth herein.

100.   The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he or she is employed.  *See* 29 U.S.C. § 207(a)(1).

101.   Defendants are subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

102.   At all relevant times, each of the Defendants was an "employer"

engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

103.    During all relevant times, Plaintiff and Collective Members were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

104.    Plaintiff and Collective Members are not exempt from the requirements of the FLSA.

105.    Plaintiff and Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

106.    Defendants knowingly failed to properly compensate Plaintiff and Collective Members for all hours worked when they worked in excess of forty (40) hours per week and failed to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

107.    Defendants also failed to create, keep, and preserve accurate records with respect to work performed by the Plaintiff and Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

108.    In violating the FLSA, Defendants acted willfully and with reckless

disregard of clearly applicable FLSA provisions.

109.   Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Violation of the Pennsylvania Minimum Wage Act
### (On Behalf of Plaintiff and the Pennsylvania Class)

110.   All previous paragraphs are incorporated as though fully set forth herein.

111.   The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated for all hours worked. *See* 43 P.S. § 333.104(a) and 34 Pa. Code § 231.21(b).

112.   The PMWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he or she is employed. *See* 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

113.   Defendants are subject to the overtime requirements of the PMWA because Defendants are employers under 43 P.S. § 333.103(g).

114.   During all relevant times, Plaintiff and the Pennsylvania Class were covered employees entitled to the above-described PMWA's protections. *See* 43 P.S.

§ 333.103(h).

115.   Defendants' compensation scheme that is applicable to Plaintiff and the Pennsylvania Class failed to comply with 43 P.S. §§ 333.104(a) and (c), 34 Pa. Code §§ 231.1(b) and 43(b).

116.   Defendants knowingly failed to compensate Plaintiff and the Pennsylvania Class at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

117.   Defendants failed and fail to accurately track all of the hours that Plaintiff and the Pennsylvania Class work. *See* 43 P.S. § 333.108 and 34 Pa. Code § 231.31.

118.   Pursuant 43 P.S. § 333.113, employers, such as Defendants, who intentionally fail to pay an employee wages in conformance with the PMWA shall be liable to the employee for the wages or expenses that were intentionally not paid, court costs and attorneys' fees incurred in recovering the unpaid wages.

119.   In violating the PMWA, Defendants acted willfully and with reckless disregard of clearly applicable PMWA provisions.

**COUNT III**
**Unjust Enrichment**
**<u>(On Behalf of Plaintiff and the Pennsylvania Class)</u>**

120.   All previous paragraphs are incorporated as though fully set forth

herein.

121.    Defendants have received and benefited from the uncompensated labors of Plaintiff and the Pennsylvania Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

122.    At all relevant times hereto, Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiff and the Pennsylvania Class without paying overtime compensation for all hours worked.

123.    Contrary to all good faith and fair dealing, Defendants induced Plaintiff and the Pennsylvania Class to perform work while failing to pay overtime compensation for all hours worked as required by law.

124.    By reason of having secured the work and efforts of Plaintiff and the Pennsylvania Class without paying overtime compensation as required by law, Defendants enjoyed reduced overhead with respect to its labor costs, and therefore realized additional earnings and profits to its own benefit and to the detriment of Plaintiff and the Pennsylvania Class. Defendants retained and continues to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

125.    Accordingly, Plaintiff and the Pennsylvania Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of herself and all

others similarly situated:

a.  An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

c.  Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) as may be owed and prejudgment interest to the fullest extent permitted under the law;

d.  Liquidated damages to the fullest extent permitted under the law;

e.  Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

f.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all issues of fact.

Dated: September 2, 2021                    Respectfully submitted,

/s/ *Alexandra K. Piazza*
Camille Fundora Rodriguez (PA 312533)
Alexandra K. Piazza (PA 315240)
Reginald Streater (PA 326878)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604

crodriguez@bm.net
apiazza@bm.net
rstreater@bm.net

*Attorneys for Plaintiff and the*
*Proposed Collective and Class*